# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| L'OREAL STEPHENSON, | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-7258 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| TCC WIRELESS, LLC, and | ) |
| OMAR ANDRABI, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, L'Oreal Stephenson, brings this action against her former employer TCC Wireless, LLC ("TCC"), and her former supervisor Omar Andrabi. Stephenson alleges that she was not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA") and that she was discriminated against and constructively discharged based on her race in violation of Title VII of the Civil Rights Act of 1964. TCC and Andrabi move for summary judgment on all counts. For the reasons set forth herein, that motion [58] is granted.

**Background**

The following facts are undisputed unless otherwise noted. Stephenson assumed her role as Retail Store Manager ("RSM") at TCC's retail store located in Chicago Heights, Illinois with a starting salary of $36,000 per year. Stephenson received and had time to review several different employment documents that laid out TCC's expectations of her as RSM. Prior to assuming her role, Stephenson completed a month-long training program at TCC's retail store located in Crest Hill, Illinois. As RSM, Stephenson was the highest-ranking employee on site at the Chicago Heights location, and she supervised up to five sales associates at any given time. Stephenson participated in interviewing potential sales associates and made hiring and disciplinary recommendations that were given special weight by her superiors and were seemingly followed. She was responsible for the

1

store's daily operations, for generating sales, for scheduling staff meetings, for reviewing sales statistics, and for scheduling her employees. Stephenson was also responsible for coaching her staff by providing them with feedback, techniques, and resources to improve their sales performance.

TCC evaluates its managers using 12-15 metrics, which include total sales, total box conversion, foot traffic, total gross profit, gross profit percentage to goal, gross profit per hour, charge backs, and accessories per click. To determine total box conversion, the total number of boxes sold (the number of cellular activations) is divided by the number of customers who entered the store. TCC also sets Key Sales Objectives for RSM's, which result in a commission if they are met. Stephenson never met those objectives or received a commission.

When Stephenson began working at the Chicago Heights location on March 20, 2017, she was supervised by District Manager Mark Bobnick, who told Stephenson to focus on the back office and getting the store in order. Later in the March of 2017, Defendant Andrabi assumed the role of District Manager and directed Stephenson to focus on sales. Andrabi checked in on Stephenson weekly and, although unhappy with her performance, coached her on how to improve. In March 2017, Stephenson's store was the third worst performing store in Andrabi's district. From April 2017 to her termination, Stephenson's store traffic and net profits decreased, as did her accessory revenue per click, activation profit, gross profit per hour, and her gross profit-per-hour percent to goal. At no point in time did Stephneson's TBC exceed 8.2, despite the fact that TCC expected a TBC of over 10%.

As District Manager, Andrabi supervised several other stores, including the TCC retail store at Archer and Central in Chicago, which was managed by Charles Snider. Snider, who is black, was routinely one of the worst performing RSM's in Andrabi's district. Andrabi also supervised the TCC retail store located in the Chicago Ridge Mall which was managed by Magdalena Sosnowska and was routinely one of the best performing stores in the district.

2

Andrabi consulted with human resources and, on June 1, 2017, presented Stephenson with a performance improvement plan, demoted her to assistant store manager, and transferred her to another location.  Andrabi explained that he was taking these steps as a temporary measure to allow Stephenson to learn from an experienced RSM, and told Stephenson that she may be able to return to being an RSM once her skills improved.  Instead of accepting the demotion, Stephenson resigned.  She was replaced by Jack Tablante, who had previously worked with Andrabi at another company.  Tablante was terminated two months later for not meeting his sales goals, and Andrabi was subsequently demoted for not meeting his own sales goals.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  However, only "alleging a factual dispute cannot defeat the summary judgment motion."  *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989).  "Statements of 'beliefs' or 'opinions' are insufficient to create a genuine issue of material fact." *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.

**Discussion**

The defendants first contend that they are entitled to summary judgment on Stephenson's FLSA claim.[1] The FLSA requires employers to pay their employees overtime compensation for any work performed in excess of forty hours per week. 29 U.S.C. §§ 207, 213; *see Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir 2012). However, there is an exception to the overtime compensation requirement for "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). An executive employee is one whose "*primary* duties" are managerial and who customarily and regularly supervises two or more employees. 29 C.F.R. § 541.1(f); *Perez v. Radioshack Corp.*, 552 F. Supp. 2d 731, 733 (N.D. Ill. Nov. 1, 2005) (Pallmeyer, J.). For an employee to be exempt under the executive exception, (1) the employee must receive at least $455 per week, (2) her primary duty must be the management of the enterprise; (3) she must customarily and regularly direct the work of two or more employees; and (4) she must have the authority to hire and fire other employees, or her suggestions and recommendations as to hiring, firing, and other changes of employment status must be given particular weight. 29 C.F.R. § 541.100(a); *Perez.*, 552 F. Supp. 2d at 736. It is the employer's burden to establish that an employee is properly classified under the executive exception. *Corning Glass Works v. Brennan*, 47 U.S. 188, 196-97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

Here, it is undisputed that Stephenson earned at least $455 per week and that she supervised two or more employees. Undisputed evidence also establishes that as an RSM, Stephenson made recommendations regarding hiring, firing, and employment status, and that her recommendations were given particular weight by her employer. Thus, the sole material question is whether or not Stephenson's primary duty was executive in nature. The undisputed evidence here establishes that

---

[1] The Court assumes without deciding that Andrabi is properly named as a defendant "employer" for the purpose of this analysis.

4

RSMs were responsible for managing inventory, coaching sales staff, scheduling employees, and making recommendations to upper management regarding employment decisions. It is also undisputed that her performance as a RSM was primarily measured based on the stores' overall performance and not on her personal sales statistics. Stephenson, however, had limited discretion; she could not actually control the inventory carried by her store, could not make human resources decisions independently, and was obligated to follow and apply corporate policies regarding store operations. Stephenson, moreover, spent eighty percent of her time engaged in sales activities. Generally, for an employee's duties to be primarily "management" she must spend more than 50% of her time on management duties. *Baudin v. Courtesy Litho Arts, Inc.*, 24 F. Supp. 2d 887, 892 (N.D. Ill. 1998). Time, however, is not the sole test. *Id.* Instead, the Court must also consider (1) the comparative importance of the managerial duties, (2) the frequency with which the employee exercised discretion, (3) the employee's freedom from supervision, and (4) the relationship between the employee's salary and the wages paid other employees for the type of nonexempt work performed by the supervisor. *Id.* Here, the undisputed facts establish that Stephenson's managerial duties were more important to the store's operation than her nonmanagerial duties, that she had discretion in a number of her managerial duties, and that her personal work was not routinely supervised by others. She ran the store and was personally held accountable for its successes and failures. Accordingly, the undisputed evidence before this Court establishes that Stephenson is an exempt executive employee. *See Calvo v. B&R Supermarket, Inc.*, 63 F. Supp. 3d 1369, 1381 (S.D. Fla. 2014) ("The person 'in charge' of a store is generally considered to have management as a primary duty, even if that person spends more aggregate time performing non-exempt duties and 'makes few significant decisions.'"). Summary judgment is therefore warranted on Stephenson's FLSA claim.

TCC and Andrabi also contend that they are entitled to summary judgment on Stephenson's race discrimination claim. It is unlawful for an employer to take an adverse action against an

employee because of her race. 42 U.S.C. § 2000e-2(a)(1). To survive summary judgement, TCC and Andrabi must present evidence that would allow a reasonable jury to find that Stephenson's race caused her demotion. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Stephenson approaches her evidentiary burden through the lens of the *McDonnell Douglas* burden-shifting framework. Under that framework, Stephenson must initially demonstrate a *prima facie* case of racial discrimination by establishing that (1) she is a member of a protected class, (2) her job performance reasonably complied with her employer's legitimate expectations, (3) she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *David v. Board of Trustees of Community College Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). If Stephenson satisfies that burden, it then becomes the defendants' burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to Stephenson to submit evidence showing that the defendants' reason is pretextual. *Id.*

Here, it is undisputed that Stephenson is a member of a protected class and that she was demoted, which constituted an adverse employment action. Stephenson also alleges that the defendants constructively discharged her when they demoted her and moved her to a location further from her home. The defendants, however, contend that Stephenson was not meeting their legitimate expectations. If an "employer's expectations are reasonable and the employer makes the employee aware of its expectations, the Court will not inquire into Defendants' method of conducting its business." *Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822, 840 (N.D. Ill. Mar. 8, 2017) (Dow, J.) (citing *Huhm v. Koehring Co.*, 718 F.2d 239, 244 (7th Cir. 1983); *see also Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1180 (7th Cir. 1997) (explaining that an employer's expectations are "legitimate" as long as they are "bona fide" and not "phony," "for it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers").

6

It is undisputed that during her employment Stephenson did not meet her Key Sales Objectives. It is also undisputed that Stephenson never met her stores' Total Box Conversion goal of 10%, which was the most important employment metric for RSMs, and that several other store metrics were not met during her employment. On these undisputed facts, Stephenson was not meeting her employers' legitimate expectations. *See Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680 (7th Cir. 2015) (holding that a plaintiff could not show he was meeting employer's legitimate expectations while also admitting that he was not meeting his production goals).

Stephenson argues that her total box conversion goal of 10% was an unrealistic expectation. Whether or not an employer's minimum expectations are realistic is not for this Court to decide; the court does not sit as a "super-personnel department," in charge of second-guessing legitimate concerns an employer may have in regard to their employee. *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012); *see Makely v. Mktg. Alts., Inc.*, No. 93 C 1189, 1995 WL 42358, at *6 (N.D. Ill. Feb. 2, 1995) (Castillo, J.) (rejecting plaintiff's argument that employer's goals "were unrealistic and hence not legitimate expectations").

Stephenson's argument that TCC's legitimate expectations were unclear due to her supervisors' conflicting instructions regarding her priorities is also unavailing. There is no evidence to suggest that Stephenson was ever instructed that she may disregard the metrics on which she knew that her performance was being evaluated. To the contrary, all of the available evidence establishes that Stephenson received regular reports indicating the metrics she was being evaluated on and that Andrabi discussed her performance with respect to those metrics with her on a weekly basis. Accordingly, the Court concludes that Stephenson did not meet TCC's legitimate expectations.

Stephenson has also failed to demonstrate a dispute of material fact as to whether similarly situated, non-African American employees were treated more favorably than her. In assessing

whether someone is "similarly situated," courts conduct a flexible, commonsense examination of all relevant factors. *Anderson v. Office of Chief Judge of Circuit Court of Cook Cnty., Ill.*, 66 F. Supp. 3d 1054, 1064 (N.D. Ill. 2014) (Tharp, J.) (citing *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). Nevertheless, the purportedly similarly situated employee must be "directly comparable to the plaintiff in all material respects." *Coleman*, 667 F.3d at 846 (citation and internal quotation marks omitted). Thus, in a typical case a plaintiff must be able to establish that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (citation and internal quotation marks omitted). Although whether a comparator is similarly situated is usually a question for the fact-finder, summary judgment is appropriate when no reasonable fact-finder could find that the plaintiffs have met their burden on the issue. *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 945 (7th Cir. 2009).

Stephenson asserts that Magdalena Sosnowska was similarly situated to her. Sosnowska, however, had a TBC score several points higher than Stephenson's in two of the three months in question, and her store was consistently one of Andrabi's most profitable stores despite being one of the smallest stores in the district. Sosnowska, moreover, is not alleged to have been recently hired, unlike Stephenson. Stephenson accordingly fails to make out a *prima facie* case of racial discrimination. *Patton v. Indianapolis Public School Bd.*, 276 F.3d 334, 338 (7th Cir. 2002) (finding that plaintiff's case failed at the *prima facie* stage because he was unable to produce a similarly situated employee). Because summary judgment is appropriate on Stephenson's race-based discrimination claim, the Court need not consider Stephenson's claim of constructive discharge based on race. *See Grayson v. O'Neil*, 150 F. Supp. 2d 979, 988 (N.D. Ill. Aug. 2, 2001) (Bucklo, J.) (recognizing that constructive discharge claims turn on the existence of illegal discrimination).

8

**Conclusion**

For the foregoing reasons, this Court grants the defendants' motion for summary judgment [58].


IT IS SO ORDERED.

Date: 6/3/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge